UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>DAVID ENRIQUE MEZA,<br><br>                              Defendant. | Case No.:  15cr3175 JM<br><br>**ORDER CLARIFYING COURT'S RULING ON DEFENDANT'S REQUEST TO ADMIT DETECTIVE BROWN'S REFERENCE TO "MISCARRIAGE"** |

On April 18, 2017, counsel for Defendant David Meza orally requested a ruling regarding whether San Diego Police Department Detective James Brown's reference to miscarriage during Defendant's June 2015 interrogation made Defendant's statement involuntary.  Relatedly, Defendant sought to introduce the miscarriage reference.  The court ruled that the reference did not render Defendant's statement involuntary, and after tentatively denying Defendant's request to introduce the reference, the court ultimately granted the request.  This order serves to clarify those rulings.

## BACKGROUND

In May 2016, Defendant filed a motion to suppress the statement he made to Detective Brown and FBI Special Agent Eric Van Houten.  (Doc. No. 53.)  Defendant's primary argument was that he was in custody at the time of the interview, and therefore

1

entitled to <u>Miranda</u> warnings, but Detective Brown did not provide those warnings or obtain a knowing and intelligent waiver of Defendant's <u>Miranda</u> rights. Defendant also argued that his statement was coerced and therefore involuntary. On this point, Defendant focused on the extensive police presence at the scene of the interview and Detective Brown's suggestion that Defendant's fiancée might have another miscarriage as the result of Defendant's failure to confess.

In opposing Defendant's motion, the Government represented that Detective Brown's reference to the miscarriage was "outside of the statement sought to be introduced by the Government in its case in chief." (Doc. No. 64 at 27.)

On August 25, 2016, the court denied Defendant's motion. (Doc. No. 83.) The court determined that Defendant was indeed in custody, but had been provided adequate <u>Miranda</u> warnings and knowingly waived his rights. Because the Government asserted that it would not use any statements made after Detective Brown's reference to miscarriage, the court did not address that issue in its order. The court reasoned that even if the interrogation became arguably coercive at that point, the Government's decision not to introduce any evidence obtained after that point made the issue moot.[1]

## DISCUSSION

On April 18, 2017, one week after trial had begun in this case and just before the Government was set to put Detective Brown on the stand and introduce Defendant's statement, Defendant requested clarification of the court's previous order. Specifically, Defendant asked the court to rule on whether Detective Brown's reference to miscarriage made Defendant's statement involuntary. Defendant referred to <u>United States v. Tingle</u>, 658 F.2d 1332 (9th Cir. 1981), a Ninth Circuit case that lays down a broad prohibition on eliciting a confession by reference to a defendant's children, which Defendant had not

---

[1] Similarly, though the order did not explicitly discuss the issue, the court determined that the surrounding circumstances of the interrogation, including the number of police officers present, the manner in which the search warrant was executed, and the location of the interrogation did not make Defendant's statement involuntary.

15cr3175 JM

discussed or cited in its May 2016 motion.

The court noted that because the Government had repeatedly made clear that it did not intend to introduce any part of Defendant's statement after Detective Brown's miscarriage reference, the reference did not affect the voluntariness of the portion of the statement the Government did intend to introduce, and therefore the issue was moot. The court also ruled that, regardless, Detective Brown's reference fell short of the conduct proscribed by <u>Tingle</u>. Accordingly, the court ruled that Defendant's statement was not involuntary on the basis of Detective Brown's reference.

In addition to that request for a ruling, Defendant also requested the court's permission to introduce Detective Brown's reference himself. Specifically, Defendant sought to play the following passage, in which Detective Brown says:

> You lied about that. Now, why would ya lie about that? Because of the obvious. You go down there with your girlfriend. Pregnant girlfriend, holding your child. Putting her in harm's way. If not harm's way in Tijuana, which is just g- a glaring, like, are you kidding me? At least you're putting her in harm's way with me. What do you think I'm gonna do to her when I get a hold o' her? Do you think those guys have been jumping up inside o' her? Not until I get a hold of her. She's now a suspect. You made her that. She is now a suspect in a homicide. A murder. And you made her that. The mother of your child. The one that is b– you already had one miscarriage. To– how– what do you think's gonna happen when I tell her that she's under arrest for murder?

The court initially denied Defendant's request because the Government did not intend to introduce that reference or any portion of Defendant's statement that followed the reference. The court further observed that Defendant's affirmative use of the reference as part of his strategy would, in essence, "invite" or introduce an element into the case that he had previously—and successfully—objected to, as the Government asserted in response to his motion to suppress that it would not introduce any part of the statement after the miscarriage reference.

The court reconsidered its ruling, however, in light of Defendant's stated intent to affirmatively use the miscarriage reference—as a sword rather than a reason to exclude the entire statement—presumably to demonstrate the tactics employed by Detective Brown, as well as Defendant's continued resistance to any suggestion he killed Jake Merendino. Given the agreement of both the Government and Defendant that a portion of Defendant's statement following the miscarriage reference would be admitted as evidence if the court allowed Defendant to introduce the reference, the court ruled that Defendant could introduce the miscarriage reference into evidence.[2]

## CONCLUSION

In sum, the court finds (1) Detective Brown's reference did not impact the portion of Defendant's statement that the Government initially intended to offer in its case in chief; (2) <u>Tingle</u> does not render Defendant's statement after the miscarriage reference involuntary; (3) Defendant was entitled to affirmatively introduce Detective Brown's reference to miscarriage.

IT IS SO ORDERED.

DATED: April 19, 2017

_____
JEFFREY T. MILLER
United States District Judge

---

[2] In response, the Government sought to admit a limited portion of Defendant's statement that came after the miscarriage reference <u>only</u> if the court allowed the reference to be admitted at Defendant's behest. Defendant stipulated his agreement to that request.